**GENOVESE**

**JOBLOVE &**

**BATTISTA**
——— P.A. ———
ATTORNEYS AT LAW

Colleen M. Hopkins, ACP, FRP
Phone:  954-453-8016
Email: chopkins@gjb-law.com

May 19, 2020

# FILED

MAY 2 0 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ————————————
                    DEPUTY CLERK

***Sent Via Federal Express***

United States District Court
Eastern District of California
Attn:  Clerk's Office
Robert T. Matsui Federal Courthouse
501 I Street, Room 4-200
Sacramento, CA 95814

RE:  Miscellaneous Matter          $2:90-mc-0126-TLN-CKD$

To Whom it May Concern:

Pursuant to the *Order Granting Plaintiff Securities and Exchange Commission's Unopposed Expedited Motion for Appointment of Receiver* [ECF No. 5] issued by Cecilia M. Altonaga, U.S. District Court for the Southern District of Florida, and 28 U.S.C. § 754, please find enclosed pleadings to be filed in the United States District Court for the Eastern District of California. Additionally, enclosed is a check in the amount of $47.00 representing the miscellaneous case filing fee.

Please contact me with any questions or concerns.

Sincerely,

Colleen M. Hopkins

Enclosure(s)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-21964-CIV-ALTONAGA/Goodman

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

vs.

**TCA FUND MANAGEMENT GROUP CORP.**, *et al.*,

Defendants, and

**TCA GLOBAL CREDIT FUND, LP**; *et al.*,

Relief Defendants.

_____/

### ORDER

THIS CAUSE came before the Court upon Receiver, Jonathan E. Perlman's Emergency Motion to Confirm and Expand Receivership [ECF No. 15], filed on May 15, 2020. Being fully advised, it is

**ORDERED AND ADJUDGED** that the Motion is **GRANTED**. TCA Global Lending Corp. is confirmed as a Receivership Asset and the original Receivership Order [ECF No. 5] is expanded to include TCA Global Lending Corp., as a named Receivership Entity, *nunc pro tunc*, as of May 11, 2020.

**DONE AND ORDERED** in Miami, Florida, this 18th day of May, 2020.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TCA FUND MANAGEMENT GROUP CORP., and | : |
| TCA GLOBAL CREDIT FUND GP, LTD., | : |
| | : |
| Defendants, and | : |
| | : |
| TCA GLOBAL CREDIT FUND, LP, | : |
| TCA GLOBAL CREDIT FUND, LTD., and | : |
| TCA GLOBAL CREDIT MASTER FUND, LP, | : |
| | : |
| Relief Defendants. | : |
| | : |

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges:

## I.      INTRODUCTION

1.      The Commission brings this action to enjoin further violations of the federal securities laws by, and obtain disgorgement and civil penalties from, defendants TCA Fund Management Group Corp. ("TCA") and TCA Global Credit Fund GP, Ltd. ("GP," and, with TCA, "Defendants"). The Commission also seeks the appointment of a receiver over Defendants and Relief Defendants TCA Global Credit Fund, LP ("Feeder Fund LP"), TCA Global Credit Fund, Ltd. ("Feeder Fund Ltd.," and, with Feeder Fund LP, "Feeder Funds"), and TCA Global Credit Master Fund, LP ("Master Fund," and, with Feeder Funds, the "Funds"), to ensure a proper wind-up of their business and a fair and appropriate distribution to the Feeder Funds' approximately 470

investors. As of November 2019, the Funds has assets under management of approximately $516 million.

2.      Feeder Funds raise money from investors and "feed" that money to Master Fund, which provides financing and investment banking services to small- and medium-size businesses. TCA, the investment adviser to the Funds, is entitled to compensation based on the amount of the Funds' assets (the "net asset value," or "NAV"); GP, the general partner of Master Fund and Feeder Fund LP, is entitled to compensation on the amount of Master Fund's profitability.

3.      Since 2010 and continuing through at least November 2019, TCA fraudulently engaged in revenue recognition practices that inflated Master Fund's revenue and the Funds' NAV using two methods.

4.      The first involved Master Fund's lending business between in or about April 2010 and December 2016. At an early stage of the loan process, the prospective borrower and Master Fund would sign a term sheet outlining the terms of the loan, including the amount of fees the borrower would pay Master Fund when the loan transactions were consummated. TCA caused Master Fund to recognize these prospective loan fees as revenue upon execution of the term sheet (as opposed to at the closing of the loan), knowing or being severely reckless in not knowing the term sheets were not binding and in many cases did not lead to a funded loan. Recognizing this loan fee revenue at the time of term sheet execution artificially increased Master Fund's profits and the NAV, which remained inflated until the fee revenue was actually earned (in the case of loans that eventually closed) or removed from the books (in the case of loans that never closed).

5.      The second method involved agreements for Master Fund to provide investment banking services to a company between in or about the latter half of 2016 and November 2019, which provided for the company to pay Master Fund a fee for these services ranging from hundreds

2

of thousands to millions of dollars. TCA would cause Master Fund to recognize these investment banking fees as revenue at the time the agreement was signed, even though (a) these companies lacked the financial wherewithal to pay these fees unless Master Fund was successful in obtaining financing for the company, which rarely occurred, and (b) Master Fund had provided few if any services to the company at the time the agreement was signed. This conduct continued until at least November 2019.

6.     As a result of these practices, Defendants caused the Funds to report to investors that the Funds were profitable every month, with an ever increasing NAV. In fact, the booking of loan fees at the time of term sheet execution artificially inflated the NAV—at some points in time by as much as $29 million. The booking of investment banking revenue at the time of agreement execution inflated the NAV by at least $130 million as of November 2019.

7.     The inflated performance and NAV values were provided to investors, and the inflated asset values were included in forms ("Forms ADV") that TCA filed with the Commission.

8.     The Funds' current situation is grim. For 2017 and 2018, the Funds' auditor issued a qualified opinion with respect to Master Fund's income and assets, including, for 2018, a qualified opinion with respect to 89% of Master Fund's NAV. By May 2019, Master Fund had only 5% of its assets in cash, with most of the balance of the assets consisting of amounts owed to Master Fund on loans to thinly capitalized borrowers, a substantial amount of which are in default. On January 21, 2020, the Feeder Funds notified their investors that the Feeder Funds had suspended redemptions and would begin to wind-up their affairs.

9.     By engaging in this conduct, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R.

3

§ 240.10b-5; and TCA violated Sections 206(1), (2), and (4), and 207 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4), and 80b-7, and Advisers Act Rules 206(4)-7 and 206(4)-8, 17 C.F.R. §§ 275.206(4)-7, 275.206(4)-8. Unless enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

## II.   DEFENDANTS AND RELIEF DEFENDANTS

### A.   Defendants

10.   TCA is a Florida corporation formed in June 2011 and headquartered in Aventura with other offices in New York, Las Vegas, London, England, and Melbourne, Australia. TCA, a Commission-registered investment adviser since August 13, 2014, serves as the investment adviser to the Funds.

11.   GP, a Cayman Islands company formed in January 2010, is the general partner of Feeder Fund LP and Master Fund.

### B.   Relief Defendants

12.   Feeder Fund LP, a Cayman Islands limited partnership formed in March 2010, engages in investment activities as an unregistered private investment fund.

13.   Feeder Fund Ltd., a Cayman Islands company formed in March 2010, engages in investment activities as an unregistered private investment fund.

14.   Master Fund, a Cayman Islands limited partnership formed in March 2010, serves as the master fund in a master-feeder structure for the Feeder Funds.

## III.   JURISDICTION AND VENUE

15.   This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), 22(a), and 22(c) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1), 77v(a), and 77v(c); Sections 21(d), 27(a), and 27(b) of the Exchange Act, 15 U.S.C. §§ 78u(d), 78aa(a), and 78aa(b); and

4

Sections 209(d), 214(a), and 214(b) of the Advisers Act, 15 U.S.C. §§ 80b-9(d), 80b-14(a), and 80b-14(b).

16.     Venue is proper in the Southern District of Florida because:  (a) many of Defendants' acts and transactions constituting violations of the Securities Act, the Exchange Act, and the Advisers Act occurred in this District, and (b) TCA is a Florida corporation with its principal place of business in this District.

17.     In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV.     FACTUAL ALLEGATIONS

### A.     Background

18.     The Feeder Funds raise money by selling securities, and provide the monies raised to Master Fund. Master Fund provides loans and investment banking services to small businesses. TCA serves as the Funds' adviser.

19.     The Feeder Funds raised money from investors through private sales of securities in the form of, respectively, shares and limited partnership interests.  The shares and limited partnerships are securities within the meaning of Section 2(a)(1) of the Securities Act, Section 3(a)(10) of the Exchange Act, and Section 202(a)(18) of the Advisers Act, 15 U.S.C. §§ 77b(a)(1), 78c(a)(10), and 80b-2(a)(18).  The Feeder Funds have approximately 470 investors, split roughly evenly between high net worth individuals and various types of institutions.  The Feeder Funds invested all of the funds raised in Master Fund.  The Funds have approximately $516 million in assets under management.

5

20.     TCA has served as the investment adviser to the Funds since September 2011.  TCA provides portfolio management services to the Funds and has discretionary authority to invest the Funds' assets.

21.     Defendants were compensated by the Funds as follows:  (a) TCA was paid a pro rata monthly "management fee" equal to a range of 1.5% to 2% per year of the Funds' NAV, and (b) GP was paid a monthly "performance allocation" equal to a range of 20% to 25% of Master Fund's realized and/or unrealized net profits.

**B.     Master Fund's Business**

22.     Master Fund provided short-term, secured financing to small- and medium-sized enterprises, usually in the form of a debt- or equity-related investment of about $1 to $5 million that required the borrower to pay interest of 12% to 18% annually, plus various fees at closing and over the duration of the loan ("loan fee").  The loan fees ranged considerably, from tens of thousands to millions of dollars per loan.  In addition, borrowers typically issued to Master Fund securities of the borrower in the form of promissory notes, debentures, warrants, and convertible instruments.

23.     At the early stages of a potential transaction, the prospective borrower would sign a non-binding "term sheet" that set forth the possible financing terms.  TCA's underwriting department would then perform due diligence on the transaction.

24.     If TCA decided to move forward, then at closing the transaction documents would be signed and Master Fund would transfer the loan proceeds to the borrower.

25.     At a closing of a financing transaction, borrowers were usually required to sign either an "investment banking" or "advisory services" agreement ("IB Agreement") with Master Fund.  The IB Agreements required companies to pay an "investment banking" or "advisory" fee

("IB Fee") to Master Fund that was "earned upon execution" of the agreement, in consideration for certain services Master Fund claimed TCA would provide the company, including identifying merger-and-acquisition opportunities, preparing business plans and financial models, and assisting with SEC reports. The IB Fee, which was payable in the form of cash, debenture, or other security, varied considerably from deal-to-deal.

26.     Beginning in the latter half of 2016, Master Fund began entering into IB Agreements with companies that TCA claimed were not seeking financing from Master Fund, for an IB Fee often ranging from hundreds of thousands to millions of dollars.

27.     Many of the companies seeking financing from Master Fund had insufficient cash to meet their working capital needs, and many used the loan proceeds to repay other debts. A substantial portion of the loans extended by Master Fund defaulted and ended up in litigation.

## C.     TCA's Revenue Recognition Practices Artificially Inflate the Master Fund's Profits and the Funds' NAV, and the Inflated Figures are Reported to Investors and the Commission

28.     TCA engaged in two revenue recognition practices that fraudulently inflated Master Fund's revenues (and therefore profits) and, as a result, the Funds' NAV. First, TCA caused Master Fund to recognize the loan fee as revenue at the time the term sheet was signed, instead of waiting for the loan to be approved and funded, which many loans never were. Second, TCA caused Master Fund to recognize IB Fee income at the time the IB Agreement was signed, even though there was no chance the companies could pay these fees unless they closed on a financing transaction, which they rarely did. TCA reported these inflated results to investors in monthly "Fact Sheets" and newsletters, TCA and GP distributed monthly account statements to investors that incorporated the inflated figures, and TCA incorporated the inflated results into Forms ADV

7

filed with the Commission. Moreover, the inflated results caused the Funds to overpay Defendants.

### 1. Recognition of Loan Fee Income at Time of Term Sheet Signing

29. TCA routinely caused Master Fund to recognize the loan fee as revenue at the time a potential borrower signed the term sheet rather than when the loan was funded. TCA knew or was severely reckless in not knowing that this practice was improper under applicable accounting standards.

30. TCA knew or was severely reckless in not knowing that signed terms sheets frequently did not lead to funded loans, in which case the loan fee was never earned.

31. Master Fund's loan-fee revenue-recognition practice increased Master Fund's profits and the NAV. The loan fee for any particular transaction inflated these figures until the loan actually occurred or until the revenue was removed from the books if the loan was never funded. To avoid having to make downward adjustments to Master Fund's revenue and the NAV, TCA would cause Master Fund to leave the loan-fee revenue on the books for months or sometimes more than a year after Master Fund had determined not to fund the loan.

32. In Spring 2016, during the audit of the Funds' 2015 financial statements, Auditors determined that Master Fund needed to adjust its revenue downward by approximately $29 million as a result of improperly recorded loan fee income. This adjustment would have reduced Master Fund's revenue by 43% and required the Funds to report an operating loss, which was contrary to what TCA had been reporting to investors throughout the year. Without these adjustments, Auditors would not have given a "clean" opinion with respect to the Funds' financial statements.

33. To avoid the downward adjustment, in late April 2016, shortly before the completion of the audit, TCA and Master Fund entered into an agreement (executed by GP on

8

behalf of Master Fund) pursuant to which TCA would assign to Master Fund $34.3 million in income TCA had received or would receive from its business and operations. In conjunction with the assignment agreement, TCA issued a promissory note in favor of Master Fund for the assigned income, which was not payable until December 31, 2018. Both documents were dated as of December 31, 2015. The notes to Master Fund's 2015 financial statements, prepared by TCA on behalf of Master Fund, falsely claimed that the assignment of income and accompanying promissory note were the result of Master Fund having "merged its business practices to be in compliance with current revenue recognition" accounting standards. As TCA and GP knew or were severely reckless in not knowing, the assignment and note had the effect of papering over the Funds' 2015 losses.

34.     Effective January 1, 2017, TCA largely stopped its practice of recognizing loan fees as revenue prior to loan funding. As a result, TCA caused certain downward adjustments to be made to the NAV. TCA paid approximately $1.5 million to investors adversely impacted by its improper recognition of loan fee revenue.

### 2.     Recognition of IB Fee Income at Time of Agreement Signing

35.     TCA would cause Master Fund to recognize IB Fees as revenue at the time the IB Agreement was signed. This purported revenue ranged from hundreds of thousands to millions of dollars per transaction.

36.     As TCA then knew or was severely reckless in not knowing, Master Fund was unlikely to be paid the vast majority of the IB Fees, because companies that agreed to pay the IB Fees lacked the ability to pay the fees unless the company was able to consummate a financing transaction, which rarely occurred.

37.     TCA also knew or was severely reckless in not knowing that Master Fund had performed few if any of the services recited in the IB Agreements at the time they were signed. Many of the companies in question denied owing any money to Master Fund.

38.     Master Fund continued to engage in this practice even though its auditors (both Auditors and a later auditing firm that replaced them) continuously issued qualified opinions regarding Master Fund's investment banking income because the auditors could not verify whether investment banking revenue met the applicable accounting standards. The fraudulent recognition of IB Fees inflated Master Fund's NAV by at least $130 million as of November 2019 and resulted in Master Fund improperly recognizing at least $155 million in cumulative revenue from September 2016 through November 2019.

### 3.     Misrepresentation of Performance

#### a.     To Investors

39.     TCA distributed monthly "Fact Sheets" and newsletters to the Funds' investors and prospective investors that TCA knew included inflated NAV balances and false performance figures from the improperly recognized loan fee and IB Fee revenue.

40.     As a result of the inflated NAVs and performance figures, Defendants knowingly distributed to investors monthly account statements falsely representing the amount of their monthly returns and investment balances. Indeed, the Funds never reported a down month. However, without TCA's inflation of Master Fund's revenue, and therefore the NAV, the Funds would have had numerous months of negative returns since inception.

41.     As a result of the loan fee and IB Fee revenue recognition practices, statements that Defendants made in the Funds' private placement memoranda that NAV inputs would be calculated in accordance with applicable accounting standards were false and misleading.

10

### b. In Forms ADV

42.     As a result of Master Fund's loan fee and IB Fee revenue recognition practices, TCA reported inflated assets under management and gross asset value for Master Fund in Forms ADV filed with the Commission on April 1, 2015, September 30, 2015, March 29, 2016, September 15, 2016, March 21, 2017, April 17, 2018, September 14, 2018, and March 29, 2019.

### D. Funds' Current Status

43.     Master Fund's current auditor has issued a qualified opinion for Master Fund's 2017 and 2018 financial statements. The auditor's qualifications included:

a.     For 2017, all of Master Fund's investment banking income of $79.7 million (70% of total income) and assets totaling approximately $195 million (approximately 44% of Master Fund's NAV of $447.9 million).

b.     For 2018, $61.6 million in investment banking income (about 47% of total income) and assets totaling approximately $384 million (about 89% of Master Fund's NAV of $430.8 million).

44.     Many of Master Fund's loans are in default, and Master Fund is in litigation with many of its borrowers. Master Fund, as of December 31, 2018, had loans outstanding of $115,185,926 in its investment portfolio. In its opinion on the 2018 financial statements, Master Fund's auditors noted that $53,517,722, or 46% of the loans outstanding, were in litigation, and that the auditor could not confirm the validity of an additional $8,658,952, or 8% of the loans outstanding.

45.     Master Fund's cash position has deteriorated considerably the last few years. While Master Fund historically held 20% to 30% of its assets in cash, beginning in March 2018, its cash

11

position had decreased to less than 10% of its assets, and since May 2019, that amount had declined to below 5% of total assets.

46.      On January 21, 2020, Feeder Funds sent letters to their investors advising that the Funds would be winding up their affairs, citing, among other things, that the Funds had received redemption and withdrawal requests in excess of the Funds' available cash, that the Funds had grown "increasing[ly] illiquid," and that "continued operation of the Funds is no longer commercially viable."

## V.      CLAIMS FOR RELIEF

### Count 1 -- Section 17(a)(1) of the Securities Act
### (Against All Defendants)

47.      The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

48.      Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, directly or indirectly employed devices, schemes, or artifices to defraud.

49.      By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

### Count 2 -- Section 17(a)(2) of the Securities Act
### (Against All Defendants)

50.      The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

51.      Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

12

52.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

### Count 3 -- Section 17(a)(3) of the Securities Act
### (Against All Defendants)

53.     The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

54.     Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

55.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

### Count 4 -- Section 10(b) and Rule 10b-5(a) of the Exchange Act
### (Against All Defendants)

56.     The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

57.     Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

58.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

### Count 5 -- Section 10(b) and Rule 10b-5(b) of the Exchange Act
### (Against All Defendants)

59.     The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

60.     Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material

facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

61.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

### Count 6 -- Section 10(b) and Rule 10b-5(c) of the Exchange Act
### (Against All Defendants)

62.     The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

63.     Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

64.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

### Count 7 -- Section 206(1) of the Advisers Act
### (Against TCA)

65.     The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

66.     TCA, for compensation, engaged in the business of directly advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. TCA was therefore an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

14

67. TCA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly knowingly or recklessly employed a device, scheme, or artifice to defraud one or more clients or prospective clients.

68. By reason of the foregoing TCA violated and, unless enjoined, is reasonably likely to continue to violate Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

## Count 8 -- Section 206(2) of the Advisers Act
## (Against TCA)

69. The Commission adopts by reference paragraphs 1 through 46 and 66 of this Complaint.

70. TCA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective clients.

71. By reason of the foregoing TCA violated and, unless enjoined, are reasonably likely to continue to violate Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

## Count 9 -- Section 206(4) and Rule 206(4)-7 of the Advisers Act
## (Against TCA)

72. The Commission adopts by reference paragraphs 1 through 46 and 66 of this Complaint.

73. TCA failed to adopt and implement written compliance policies and procedures reasonably designed to prevent violations of the Advisers Act and the rules promulgated thereunder.

74. By reason of the foregoing TCA violated and, unless enjoined, is reasonably likely to continue to violate Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Advisers Act Rule 206(4)-7, 17 C.F.R. § 275.206(4)-7.

15

## Count 10 -- Section 206(4) and Rule 206(4)-8(a) of the Advisers Act
## (Against TCA)

75.    The Commission adopts by reference paragraphs 1 through 46 and 66 of this Complaint.

76.    The Funds were "pooled investment vehicles" within the meaning of Rule 206(4)-8(b) of the Advisers Act, 17 C.F.R. § 275.206(4)-8(b).

77.    TCA, directly or indirectly, negligently (a) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in the Funds, and (b) engaged in acts, practices, or course of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the Funds.

78.    By reason of the foregoing TCA violated and, unless enjoined, is reasonably likely to continue to violate Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Advisers Act Rule 206(4)-8(a), 17 C.F.R. § 275.206(4)-8(a).

## Count 11 -- Section 207 of the Advisers Act
## (Against TCA)

79.    The Commission adopts by reference paragraphs 1 through 46 and 66 of this Complaint.

80.    In TCA's Forms ADV filed with the Commission pursuant to Section 204 of the Advisers Act, 15 U.S.C. § 80b-4, TCA willfully made untrue statements about the amount of TCA's assets under management and Master Fund's gross asset value.

81.    By reason of the foregoing TCA violated and, unless enjoined, is reasonably likely to continue to violate Section 207 of the Advisers Act, 15 U.S.C. § 80b-7.

## VI.    RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.    Permanent Injunction

Issue a Permanent Injunction restraining and enjoining (a) Defendants from violating Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and (b) TCA from violating Sections 206(1), 206(2), 206(4), and 207 of the Advisers Act, 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4), and 80b-7, and Rules 204(4)-7 and 206(4)-8(a) thereunder.

### B.    Disgorgement

Issue an Order directing Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### C.    Civil Penalty

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78(d)(3), and in addition with respect to TCA, Section 209(e) of the Advisers Act, 15 U.S.C.§ 80b-9(e).

### D.    Appointment of a Receiver

Appoint a receiver over Defendants and Relief Defendants.

### E.    Further Relief

Grant such other and further relief as may be necessary and appropriate.

## F.     Retain Jurisdiction

Retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable petition or motion by the Commission for additional relief within the jurisdiction of this Court.

May 11, 2020                                        Respectfully submitted,

By:     */s/ Andrew O. Schiff*
Regional Trial Counsel
S.D. Fla. No. A5501900
Direct Dial:  (305) 982-6390
Email:  schiffa@sec.gov

Stephanie N. Moot
Trial Counsel
Fla. Bar No. 30377
Direct Dial:  (305) 982-6313
Email:  moots@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone:  (305) 982-6300
Facsimile:  (305) 536-4146

Of counsel:

Shan Chang, Senior Counsel
Raynette R. Nicoleau, Senior Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone:  (305) 982-6300

JS 44 (Rev. 06/17) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS** Securities and Exchange Commission

**DEFENDANTS** TCA Fund Management Group Corp., TCA Global Credit Fund GP, Ltd et al.

**(b)** County of Residence of First Listed Plaintiff

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Miami-Dade County

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Andrew O. Schiff and Stephanie N. Moot, SEC, 801 Brickell Avenue
Suite 1950, Miami, FL 33131, (305) 982-6313; moots@sec.gov

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☑ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (See VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation Transfer
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Multidistrict Litigation – Direct File
☐ 9 Remanded from Appellate Court

**VI. RELATED/ RE-FILED CASE(S)**
*(See instructions):* a) Re-filed Case ☐ YES ☑ NO
b) Related Cases ☑ YES ☐ NO
JUDGE: Hon. Robert N. Scola, Jr.
DOCKET NUMBER: 20-cv-21808-RNS

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
violation of federal securities laws-15 U.S.C. §§ 77q(a)(1-3) , 78j(b), 80b-6(1-2, 4), 80b-7
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ disgorgement civil penalties, PJI, permanent injunction, receiver appt.
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**
DATE May 11, 2020
SIGNATURE OF ATTORNEY OF RECORD
s/Stephanie N. Moot

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ IFP _____ JUDGE _____ MAG JUDGE _____

JS 44 (Rev. 06/17) FLSD Revised 06/01/2017

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked. Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.** **Related/Refiled Cases.** This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VIII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-21964-CIV-ALTONAGA/Goodman

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

vs.

**TCA FUND MANAGEMENT GROUP CORP.**, *et al.*,

Defendants, and

**TCA GLOBAL CREDIT FUND, LP**; *et al.*,

Relief Defendants.

_____/

## ORDER GRANTING PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S UNOPPOSED EXPEDITED MOTION FOR APPOINTMENT OF RECEIVER

THIS CAUSE came before the Court on Plaintiff Securities and Exchange Commission's Unopposed Motion and Memorandum of Law for Appointment of Receiver [ECF No. 3]. The Court has carefully reviewed the Motion and finds that, based on the record in these proceedings, the appointment of a receiver is necessary and appropriate for purposes of marshaling and preserving all assets of the Receivership Entities ("Receivership Assets") and those assets of the Receivership Entities that: (a) are attributable to funds derived from investors or clients of the Receivership Entities; (b) are held in constructive trust for the Receivership Entities; (c) were fraudulently transferred by the Receivership Entities; and/or (d) may otherwise be includable as assets of the estates of the Receivership Entities.

The Receivership Entities have consented to the appointment of a receiver, the Court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Entities, and venue properly lies in this District. Therefore, it is

**ORDERED AND ADJUDGED** that the Motion [ECF No. 3] is **GRANTED** as follows:

1.      The Court takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Entities.

2.      Until further Order of this Court, Jonathan E Perlman is appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Entities and is given authority to retain Genovese Joblove & Battista as counsel.

## I.      Asset Freeze

3.      Except as otherwise specified herein, all Receivership Assets are frozen until further order of the Court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds.

## II.      General Powers and Duties of Receiver

4.      The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Entities under applicable state, federal, or foreign law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66.

5.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Entities are hereby dismissed and the

powers of any general partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Entities and shall pursue and preserve all their claims.

6.      No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities.

7.      Subject to the specific provisions in Sections III through XIV, below, the Receiver has the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B.      To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C.      To manage, control, operate and maintain the Receivership Estates and hold in Receiver's possession, custody and control all Receivership Property, pending further Order of the Court;

D.      To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging Receiver's duties;

E.      To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Entities;

3

F.     To engage and employ persons in Receiver's discretion to assist Receiver in carrying out Receiver's duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G.     To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.     The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.     To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging Receiver's duties;

J.     To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and,

K.     To take such other action as may be approved by the Court.

## III.    Access to Information

8.     The Receivership Entities and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the Receivership Entities, as well as those acting in their place, are ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

9.     The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and

4

produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities. In the event the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

10. To issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Federal Rule of Civil Procedure 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

## IV. Access to Books, Records and Accounts

11. The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Entities. All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

12. The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall cooperate with and assist the Receiver in the performance of Receiver's duties.

13. The Receivership Entities, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the

5

property, business, books, records, accounts or assets of the Receivership Entities are directed to deliver the same to the Receiver or the Receiver's agents and/or employees.

14. All banks, brokerage firms, financial institutions, and other persons or entities that have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Entities that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

A. Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon instructions from the Receiver;

B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C. Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D. Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V.    **Access to Real and Personal Property**

15.    The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

16.    The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

17.    In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Entities, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

18.    The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to

7

the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

## VI.  **Notice to Third Parties**

19.     The Receiver shall promptly give notice of Receiver's appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

20.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Entity shall, until further ordered by the Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Entity had received such payment.

21.     In furtherance of Receiver's responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

22.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone

8

other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any Receivership Entities, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Entities. The Receivership Entities shall not open a new mailbox or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

23.    Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII.    Injunction Against Interference with Receiver

24.    The Receivership Entities and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.     Hinder, obstruct or otherwise interfere with the Receiver in the performance of Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C.     Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Entity, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Entity or which otherwise affects any Receivership Property; or,

D.     Interfere with or harass the Receiver or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Entities.

25.     The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

**VIII.   Stay of Litigation**

26.     As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of the Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in Receiver's capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

27.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

28.     All Ancillary Proceedings are stayed in their entirety, and all courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## IX.     Managing Assets

29.     For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

30.     The Receiver's deposit account shall be entitled, together with the name of the action:

A.     Receiver's Account, Estate of TCA Fund Management Group Corp.

B.     Receiver's Account, Estate of TCA Global Credit Fund GP, Ltd.

C.     Receiver's Account, Estate of TCA Global Credit Fund, LP

D.     Receiver's Account, Estate of TCA Global Credit Fund, Ltd.

E.     Receiver's Account, Estate of TCA Global Credit Master Fund, LP

31.     The Receiver may, without further Order of the Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

32. Subject to Paragraph 33 immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

33. Upon further Order of the Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

34. The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

35. The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

## X.    Investigate and Prosecute Claims

36. Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in Receiver's discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property.

12

37.     Subject to Receiver's obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

38.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all Receivership Entities.

39.     The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, Receiver's Retained Personnel (as that term is defined below), and the Receivership Estate.

## XI.     **Bankruptcy Filing**

40.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Entities. If a Receivership Entity is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.

13

Pursuant to Paragraph 4 above, the Receiver is vested with management authority for all Receivership Entities and may therefore file and manage a Chapter 11 petition.

41. The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Entities in bankruptcy proceedings.

**XII.** **Liability of Receiver**

42. Until further Order of the Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with Receiver's fiduciary obligations in this matter.

43. The Receiver and Receiver's agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of the Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by the Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

44. The Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

45. In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

14

## XIII. Recommendations and Reports

46. The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

47. Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

48. Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

49. The Quarterly Status Report shall contain the following:

   A. A summary of the operations of the Receiver;

   B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

   C. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

   D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

   E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.  A list of all known creditors with their addresses and the amounts of their claims;

G.  The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.  The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

50.  On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIV.  Fees, Expenses and Accountings

51.  Subject to Paragraphs 52-58 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

52.  Subject to Paragraph 53 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist Receiver in carrying out the duties and responsibilities described in this Order.  Except for counsel retained by the Receiver pursuant to Paragraph 2 of this Order, the Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

53.  The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission"

(the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

54.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

55.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the receivership.

56.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

57.     Each Quarterly Fee Application shall:

       A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

       B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

17

58.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in

a format to be provided by Commission staff, as well as the Receiver's final application for

compensation and expense reimbursement.

**DONE AND ORDERED** in Miami, Florida, this 11th day of May, 2020.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

18

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-21964-CIV-ALTONAGA/Goodman

**SECURITIES AND EXCHANGE COMMISSION,**

    Plaintiff,

v.

**TCA FUND MANAGEMENT GROUP CORP.,**
*et al.*,

    Defendants, and

**TCA GLOBAL CREDIT FUND, LP**; *et al.*,

    Relief Defendants.

_____/

### JUDGMENT OF PERMANENT INJUNCTION AND OTHER RELIEF

**THIS CAUSE** came before the Court on Plaintiff, the Securities and Exchange
Commission's ("SEC['s]" or "Commission['s]") Notice of Partial Settlement and Unopposed
Motion for Entry of Judgment [ECF No. 6]. The Commission having filed a Complaint [ECF No.
1] and an Unopposed Expedited Motion and Memorandum of Law for Appointment of Receiver
("Receiver Order") [ECF No. 3], and Defendants TCA Fund Management Group Corp. ("TCA")
and TCA Global Credit Fund GP, Ltd. ("GP") (collectively, "Defendants"), and Relief Defendants
TCA Global Credit Master Fund, LP, TCA Global Credit Fund, Ltd., and TCA Global Credit Fund,
LP (collectively, "Relief Defendants") having entered a general appearance; consented to the
Court's jurisdiction over Defendants and Relief Defendants and the subject matter of this action;
consented to entry of this Judgment of Permanent Injunction and Other Relief ("Judgment")
without admitting or denying the allegations of the Complaint (except as to personal and subject
matter jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal

from this Judgment, it is **ORDERED AND ADJUDGED** that the Motion **[ECF No. 6]** is **GRANTED** as follows:

## I.

## PERMANENT INJUNCTIVE RELIEF

### A.

### Section 17(a) of the Securities Act

**IT IS HEREBY ORDERED** that Defendants TCA and GP are permanently restrained and enjoined from violating, directly or indirectly, Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

    (a) any investment in or offering of securities;

    (b) the valuation of any assets, investments, or securities;

    (c) any returns on investment or performance results;

2

(d) the prospects for success of any product or company; or

(e) compensation or fees paid to any person or entity.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendants TCA's and GP's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants TCA and GP, or with anyone described in (a).

**B.**
**Section 10(b) of the Exchange Act**
**and Rule 10b-5 thereunder**

**IT IS HEREBY ORDERED** that Defendants TCA and GP are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, *see* 17 C.F.R. § 240.10b-5, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)    to employ any device, scheme, or artifice to defraud;

(b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

by directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or

3

prospective investor, about:

(a) any investment in or offering of securities;

(b) the valuation of any assets, investments, or securities;

(c) any returns on investment or performance results;

(d) the prospects for success of any product or company; or

(e) compensation or fees paid to any person or entity.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendants TCA's and GP's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants TCA and GP, or with anyone described in (a).

**C.**
**Sections 206(1) and 206(2) of the Advisers Act**

**IT IS HEREBY ORDERED** that Defendant TCA is permanently restrained and enjoined from violating, directly or indirectly, Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) and 80b-6(2), by using the mails or any means or instrumentality of interstate commerce:

(a) to employ any device, scheme, or artifice to defraud any client or prospective client; or

(b) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;

by directly or indirectly, (i) creating a false appearance or otherwise deceiving any any client or prospective client, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication

4

with any any client or prospective client, about:

      (a) any investment in or offering of securities;

      (b) the valuation of any assets, investments, or securities;

      (c) any returns on investment or performance results;

      (d) the prospects for success of any product or company; or

      (e) compensation or fees paid to any person or entity.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant TCA's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant TCA, or with anyone described in (a).

**D.**
**Section 206(4) of the Advisers Act**
**and Rule 206(4)-8 thereunder**

**IT IS HEREBY ORDERED** that Defendant TCA is permanently restrained and enjoined from violating, directly or indirectly, Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, *see* 17 C.F.R. § 275.206(4)-8, by using the mails or any means or instrumentality of interstate commerce, while engaged in the business of advising a pooled investment vehicle for compensation as to the advisability of investing in, purchasing or selling securities:

      (a)     to make any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in a pooled investment vehicle; or

5

(b)     otherwise engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative, with respect to any investor or prospective investor in a pooled investment vehicle;

by directly or indirectly, (i) creating a false appearance or otherwise deceiving any investor or prospective investor, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor or prospective investor, about:

(a) any investment in or offering of securities;

(b) the valuation of any assets, investments, or securities;

(c) any returns on investment or performance results;

(d) the prospects for success of any product or company; or

(e) compensation or fees paid to any person or entity.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant TCA's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant TCA, or with anyone described in (a).

**E.**
**Section 206(4) of the Advisers Act**
**and Rule 206(4)-7 thereunder**

**IT IS HEREBY ORDERED** that Defendant TCA is permanently restrained and enjoined from violating Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Advisers Act Rule 206(4)-7, 17 C.F.R. § 275.206(4)-7, by use of the mails or any means or instrumentality of

interstate commerce, directly or indirectly failing to adopt and implement written policies and procedures reasonably designed to prevent violation of the Advisers Act and the rules thereunder.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant TCA's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant TCA, or with anyone described in (a).

### F.
### Section 207 of the Advisers Act

**IT IS HEREBY ORDERED** that Defendant TCA is permanently restrained and enjoined from violating Section 207 of the Advisers Act, 15 U.S.C. § 80b-7, by willfully making untrue statements of material fact in Forms ADV filed with the Commission, or willfully omitting to state in such Forms ADV any material facts required to be stated therein.

**IT IS FURTHER ORDERED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant TCA's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant TCA, or with anyone described in (a).

### II.

### DISGORGEMENT, PREJUDGMENT INTEREST, AND CIVIL PENALTIES

**IT IS FURTHER ORDERED** that upon motion of the Commission, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and as to Defendant TCA only, Section 209(e) of the

7

Advisers Act, 15 U.S.C. § 80b-9, against Defendants and, if so, the amounts of the disgorgement and/or civil penalties. If disgorgement is ordered, Defendants shall pay prejudgment interest thereon, calculated from August 13, 2014, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that Defendants did not violate the federal securities laws as alleged in the Complaint; (b) Defendants may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

## III.
## INCORPORATION OF CONSENT

**IT IS FURTHER ORDERED** that the Consent, including Defendants' and Relief Defendants' agreement to an Order Appointing a Receiver over them, is incorporated herein with the same force and effect as if fully set forth herein, and that Defendants and Relief Defendants shall comply with all of the undertakings and agreements set forth therein.

## IV.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that the Court retains jurisdiction of this matter for the

purposes of enforcing the terms of this Judgment.

**V.**

### **RULE 54(b) CERTIFICATION**

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.

**DONE AND ORDERED** in Miami, Florida, this 12th day of May, 2020.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

9